## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **DAVID MEYER, individually and d/b/a Dauphin Island Beach Rentals, RICHARD M. COLLIER, SR., individually and d/b/a P.J. Seafood, HERMAN RANDOLF BRIDGES, individually and d/b/a, H.R. Bridges Seafood, JOHN SAMUEL PONDER, d/b/a Deer River Seafood, LLC, DENNIS BENJAMIN MILLER, STEVE DENMARK, individually and d/b/a The Island Rainbow and d/b/a The Trading Post, GARY BRATT, individually and d/b/a Chaise N' Rays, KIER HODAS, individually and d/b/a Island Times Mountain Time, CARRIE HODAS, Individually and d/b/a Island Times Mountain Time, all on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs** | CASE NO. |
| **versus** | |
| | SECTION |
| **BP, plc, BP PRODUCTS NORTH AMERICA, INC., BP AMERICA, INC., TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., HALLIBURTON ENERGY SERVICES, INC. AND CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION** | MAGISTRATE

JURY DEMAND |
| **Defendants** | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CLASS ACTION COMPLAINT

Plaintiffs, DAVID MEYER, RICHARD M. COLLIER, SR., d/b/a P.J. Seafood,

HERMAN RANDOLF BRIDGES d/b/a H.R. Bridges Seafood, JOHN SAMUEL PONDER d/b/a

-1-

Deer River Seafood, LLC, and DENNIS BENJAMIN MILLER, individually and as representatives of the class defined herein (the "Class"), bring this action against the defendants identified below ("Defendants"), and aver as follows:

## INTRODUCTION

1. This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages suffered by Plaintiffs and the Class Members as a result of the oil spill that resulted from the explosion and fire aboard and subsequent sinking of the oil rig Deepwater Horizon (hereinafter "Deepwater Horizon" or "Oil Rig") on April 20, 2010, at about 10:00 p.m. central time on the outer Continental Shelf, off the Louisiana coast. Following the sinking of the Oil Rig, approximately 1,000 barrels per day of crude oil have been leaking from the oil well, upon which the Deepwater Horizon was performing completion operations, and from the pipe connected to it (drill stack). The fast-moving oil slick, which has grown to 100 miles long by 45 miles wide, is headed towards the Alabama coast and has already caused detrimental effects upon the Gulf of Mexico and Alabama marine environments, coastal environments and estuarine areas, which are used by Plaintiffs and the Class Members for different activities, including fishing and to earn a livelihood.

## PARTIES

2. Plaintiff DAVID MEYER, d/b/a Dauphin Island Beach Rentals, is a citizen of Alabama who resides within this district. Plaintiff Meyer owns residential property in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, he has suffered damages that are more fully described below.

Plaintiff Meyer, d/b/a Dauphin Island Beach Rentals, earns his livelihood as a property and business owner in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, he has suffered damages that are more fully described below.

3. Plaintiff RICHARD M. COLLIER, d/b/a P.J. Seafood, is a citizen of Alabama who resides within this district. Plaintiff Collier earns his livelihood as a commercial oysterman and fisherman in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)) (the "Coastal Zone") and, as a result of the events described above and below, he has suffered damages that are more fully described below.

4. Plaintiff HERMAN RANDOLF BRIDGES, d/b/a H.R. Bridges Seafood, is a citizen of Alabama who resides within this district. Plaintiff Bridges earns his livelihood as a commercial seafood wholesaler. As such, he is dependent upon goods produced in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, he has suffered damages that are more fully described below.

5. Plaintiff JOHN SAMUEL PONDER, d/b/a Deep River Seafood, LLC, is a citizen of Alabama who resides within this district. Plaintiff Ponder earns his livelihood as a commercial fisherman in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, he has suffered damages that are more fully described below.

6. Plaintiff DENNIS BENJAMIN MILLER is a citizen of Alabama who resides within this district. Plaintiff Miller earns his livelihood as a commercial fisherman in the Gulf of

Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, he has suffered damages that are more fully described below.

7.  Plaintiff STEVE DENMARK, d/b/a The Island Rainbow and d/b/a The Trading Post, is a citizen of Alabama who resides within this district. Plaintiff Denmark owns residential property in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, he has suffered damages that are more fully described below. Plaintiff Denmark, d/b/a The Island Rainbow and d/b/a The Trading Post, earns his livelihood as a property and business owner in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, he has suffered damages that are more fully described below.

8.  Plaintiff GARY BRATT, d/b/a Chaise N' Rays, is a citizen of Alabama who resides within this district. Plaintiff Bratt owns residential property in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, he has suffered damages that are more fully described below. Plaintiff Bratt, d/b/a Chaise N' Rays, earns his livelihood as a property and business owner in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, he has suffered damages that are more fully described below.

9.  Plaintiffs KIER HODAS and CARRIE HODAS, d/b/a Island Times Mountain Time, are citizens of Alabama who reside within this district. Plaintiffs Kier and Carrie Hodas own

residential property in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, they have suffered damages that are more fully described below. Plaintiffs Kier and Carrie Hodas, d/b/a Island Times Mountain Time, earn their livelihood as property and business owners in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C. § 1331(e)), and, as a result of the events described above and below, they have suffered damages that are more fully described below.

10. Defendants herein are:

    (a) Transocean, Ltd., ("Transocean, Ltd.") a foreign corporation doing business in the State of Louisiana and within this district;

    (b) Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore"), a foreign corporation doing business in the State of Louisiana and within this district;

    (c) Transocean Deepwater, Inc. ("Transocean Deepwater"), a foreign corporation doing business in the State of Louisiana and within this district;

    (d) BP, plc ("BP"), a foreign corporation doing business in the State of Louisiana and within this district;

    (e) BP Products North America, Inc. ("BP Products") a foreign corporation doing business in the State of Louisiana and within this district;

    (f) BP America, Inc. ("BP America"), a foreign corporation doing business in the State of Louisiana and within this district;

    (g) Halliburton Energy Services, Inc. ("Halliburton"), a foreign corporation doing

business in the State of Louisiana and within this district; and

(h) Cameron International Corporation f/k/a Cooper-Cameron Corporation

("Cameron"), a foreign corporation doing business in the State of Louisiana

and within this district.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this class action pursuant to (1) 28 U.S.C. §1332(d)(2),

because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of

interest and costs, and it is a class action brought by citizens of a State that is different

from the State where at least one of the Defendants is incorporated or does business; (2)

28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United

States of America, including the laws of the State of Louisiana which have been declared,

pursuant to 43 U.S.C. §§ 1331 (f)(1) and 1333(a)(2), to be the law of the United States for

that portion of the outer Continental Shelf from which the oil spill originated; and (3) 43

U.S.C. § 1331(1), which extends exclusive Federal jurisdiction to the outer Continental

Shelf.

12. Prosecution of this action in this district is proper under 28 U.S.C. § 1391(a)(2) because

all the events or omissions giving rise to the claims asserted herein occurred in this

district.

## FACTUAL ALLEGATIONS

13. Transocean, Ltd., Transocean Offshore and Transocean Deepwater (collectively

"Transocean") are the owners and/or operators of the Deepwater Horizon, a semi-

submersible mobile drilling rig, which was performing completion operations for BP, BP

Products and BP America on the outer Continental Shelf, at the site from which the oil
spill now originates, on April 20, 2010.

14. BP, BP Products and BP America (collectively "BP") are the holders of a lease granted by
the Minerals Management Service that allows BP to drill for oil and perform oil-
production-related operations at the site of the oil spill, and on April 20, 2010, operated
the oil well that is the source of the oil spill.

15. Upon information and belief, Cameron manufactured and/or supplied the Deepwater
Horizon blow-out-preventers ("BOPs") that failed to operate upon the explosion, which
should have prevented the oil spill. The BOPs were defective because they failed to
operate as intended. As such, Cameron is liable to Plaintiffs and the Class Members
pursuant to Alabama Extended Manufacturer's Liability Doctrine in addition to being
liable for its negligence.

16. Halliburton was engaged in cementing operations of the well and well cap and, upon
information and belief, improperly and negligently performed these duties, increasing the
pressure at the well and contributing to the fire, explosion and resulting oil spill.

17. At all times material hereto, the Deepwater Horizon was owned, manned, possessed,
managed, controlled, chartered and/or operated by Transocean and/or BP.

18. The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil spill
were caused by the negligence of Defendants, which renders them liable jointly, severally
and *in-solido* to Plaintiffs and the Class Members for all their damages.

19. The injuries and damages suffered by Plaintiffs and the Class Members were caused by
Defendants' violations of numerous statutes and regulations, including, but not limited to,

statutes and regulations issued by OSHA and the United States Coast Guard, including

the requirement to test the sub-sea BOPs at regular intervals.

20. Defendants knew of the dangers associated with deep water drilling and failed to take

appropriate measures to prevent damage to the Plaintiffs, the Class Members, the State of

Alabama's and the Gulf of Mexico's marine and coastal environments and estuarine

areas, and the Coastal Zone, where Plaintiffs and the Class Members work and earn a

living.

21. The spilled oil has not and will not simply evaporate off of the surface of the water and is

causing dangerous environmental contamination of the Gulf of Mexico and its shorelines,

threatening Alabama's sensitive wetlands and estuarine areas.

22. The oil spill and the contamination have caused and will continue to cause loss of

revenue to persons (and businesses) who are being prevented from using the Gulf of

Mexico and Alabama's Coastal Zone for diverse activities, including work and to earn a

living.

23. There are many other potential effects from the oil spill that have not yet become known,

and Plaintiffs reserve the right to amend this Complaint once additional information

becomes available.

## CLASS DEFINITION

24. Plaintiffs bring this action on behalf of themselves and all others similarly situated, who

are members of the following Class:

> All individuals who own property, live, work in, or derive income from
> the Alabama "Coastal Zone," as that term is defined in 43 U.S.C. §
> 1331(e), and who have sustained any legally cognizable loss and/or
> damages as a result of the April 20, 2010, fire and explosion which

occurred aboard the Deepwater Horizon drilling rig and the oil spill
resulting therefrom.

Excluded from the Class are: the officers and directors of any of the Defendants,
any judge or judicial officer assigned to this matter and his or her immediate
family, and any legal representative, successor, or assign of any excluded persons
or entities.

25. Specifically, Plaintiffs expect to ask the Court to approve various subclasses,

including but not necessarily limited to the following:

(a)   All Alabama fishermen, including but not limited to oysterers,
shrimpers, crabbers and other fishermen, who derive income from
the Alabama "Coastal Zone," as that term is defined in 43 U.S.C. §
1331(e), and who have sustained any legally cognizable loss and/or
damages as a result of the April 20, 2010, fire and explosion which
occurred aboard the Deepwater Horizon drilling rig and the oil spill
resulting therefrom.

(b)   All Alabama seafood wholesalers and retailers who derive income
from the Alabama "Coastal Zone," as that term is defined in 43
U.S.C. § 1331(e), and who have sustained any legally cognizable
loss and/or damages as a result of the April 20, 2010, fire and
explosion which occurred aboard the Deepwater Horizon drilling rig
and the oil spill resulting therefrom.

(c)   All Alabama commercial property and business owners, who derive
income from the Alabama "Coastal Zone," as that term is defined in
43 U.S.C. § 1331(e), and who have sustained any legally cognizable
loss and/or damages as a result of the April 20, 2010, fire and
explosion which occurred aboard the Deepwater Horizon drilling rig
and the oil spill resulting therefrom.

(d)   All Alabama residential property owners, who derive income from
the Alabama "Coastal Zone," as that term is defined in 43 U.S.C. §
1331(e), and who have sustained any legally cognizable loss and/or
damages as a result of the April 20, 2010, fire and explosion which
occurred aboard the Deepwater Horizon drilling rig and the oil spill
resulting therefrom.

## CLASS ACTION ALLEGATIONS

26. **Numerosity of the Class**:  The proposed Class is so numerous that joinder is impractical. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

27. **Predominance of Common Questions of Fact and Law**: There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

    (a)   Whether Defendants caused and/or contributed to the fire, explosion and oil spill;

    (b)   Whether Defendants' actions were negligent;

    (c)   Whether the fire, explosion and oil spill have caused environmental or other damage; and

    (d)   The amount of damages Plaintiffs and the Class Members should receive in compensation.

28. **Typicality:** Plaintiffs and the Class Members have suffered similar harm as a result of Defendants' actions.

29. **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class Members they seek to represent.  Plaintiffs have no claims antagonistic to those of the Class.  Plaintiffs have retained counsel competent and experienced in complex class actions and maritime and environmental litigation.

30. **Superiority**: A class action is superior to other available methods for the fair and

efficient adjudication of this litigation since individual litigation of the claims of all Class

Members is impracticable. Even if every Class Member could afford individual

litigation, the court system could not. It would be unduly burdensome to this Court in

which individual litigation of thousands of cases would proceed. Individual litigation

presents a potential for inconsistent or contradictory judgments, and the prospect of a race

for the courthouse and an inequitable allocation of recovery among those with equally

meritorious claims. Individual litigation increases the expenses and delay to all parties

and the court system in resolving the legal and factual issues common to all claims related

to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer

management difficulties and provides the benefit of a single adjudication, economies of

scale, and comprehensive supervision by a single court.

31. The various claims asserted in the action are also certifiable under the provisions of Rules

23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

(a)    The prosecution of separate actions by thousands of individual Class Members

would create a risk of inconsistent or varying adjudications with respect to

individual Class Members, thus establishing incompatible standards of conduct

for Defendants;

(b)    The prosecution of separate actions by individual Class Members would also

create the risk of adjudications with respect to them that would, as a practical

matter, be dispositive of the interests of the other Class Members who are not

parties to such adjudications and would substantially impair or impede their

ability to protect their interests; and

(c)    The questions of law or fact common to the Members of the Class predominate

over any questions affecting only individual Members, and that a class action is

superior to other available methods for the fair and efficient adjudication of the

controversy.

## FIRST CAUSE OF ACTION
### Negligence

32. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and

further alleges as follows:

33. The fire, explosion and resulting oil spill was caused by the concurrent negligence of the

Defendants.

34. Upon information and belief, Plaintiffs aver that the fire, explosion and resulting oil spill

was caused by the joint negligence and fault of the Defendants in the following non-

exclusive particulars:

(a)    Failing to properly operate the Deepwater Horizon;

(b)    Operating the Deepwater Horizon in such a manner that a fire and explosion

occurred onboard, causing it to sink and resulting in an oil spill;

(c)    Failing to properly inspect the Deepwater Horizon to ensure that its equipment

and personnel were fit for their intended purpose;

(d)    Acting in a careless and negligent manner without due regard for the safety of

others;

(e)    Failing to promulgate, implement and enforce rules and regulations pertaining to

the safe operations of the Deepwater Horizon which, if they had been so

-12-

promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

(f)     Operating the Deepwater Horizon with untrained and unlicensed personnel;

(g)     Inadequate and negligent training and hiring of personnel;

(h)     Failing to take appropriate action to avoid or mitigate the accident;

(i)     Negligently implementing policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

(j)     Employing untrained or poorly trained employees and failing to properly train their employees;

(k)     Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

(l)     Failing to timely warn;

(m)     Failing to timely bring the oil release under control;

(n)     Failing to provide appropriate accident prevent equipment;

(o)     Failing to observe and read gauges that would have indicated excessive pressures in the well;

(p)     Failing to react to danger signs;

(q)     Providing BOPs that failed to work properly;

(r)     Improperly or inadequately conducting well and well cap cementing operations;

(s)     Acting in a manner that justifies imposition of punitive damages; and

(t)     Such other acts of negligence and omissions as will be shown at the trial of this matter; all of which acts are in violation of the laws of Alabama and Federal law

-13-

applicable on the outer Continental Shelf.

35. In addition, and in the alternative, the fire, explosion, sinking and resulting oil spill were caused by defective equipment, including the BOPs, which were in the care, custody, and control of Defendants and for which Defendants were responsible.  Defendants knew or should have known of these defects and Defendants are, therefore, liable for them.

36. The injuries to Plaintiffs and the Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

37. In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs and the Class Members were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiffs and the Class Members, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the fire, explosion, sinking and oil spill resulted from the negligence of Defendants.  Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them and Plaintiffs, therefore, plead the doctrine of *res ipsa loquitur*.

38. Plaintiffs and the Class Members are entitled to a judgment finding Defendants liable to Plaintiffs and the Class Members for damages suffered as a result of Defendants' negligence and awarding Plaintiffs and the Class Members adequate compensation therefore in amounts determined by the trier of fact.

### SECOND CAUSE OF ACTION
### Strict Liability for Abnormally Dangerous Activity

39. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

40. Defendants, as the owners and/or operators of the Deepwater Horizon, engaged in abnormally dangerous activities by the manner in which they maintained and operated the Deepwater Horizon.  Defendants' activities resulted in the intentional, incidental or accidental fire, explosion, sinking and resulting oil spill from the Deepwater Horizon mobile offshore drilling unit, which (a) created a high degree of risk of harm to others, and particularly to Plaintiffs; (b) created a risk involving a likelihood that the harm threatened by Defendants' activities would be great; (c) created a risk of harm that could not be eliminated by the exercise of reasonable care; (d) were not a matter of common usage; (e) were inappropriate to the place that they were being carried on, in that they constituted a non-natural use of Defendants' oil lease which imposed an unusual and extraordinary risk of harm to Plaintiffs.

41. As a direct and proximate result of Defendants' conduct in engaging in the abnormally dangerous activities alleged above, substantial amounts of crude oil have been released and continue to be released from the well leased by BP.  The harm sustained by Plaintiffs is exactly the kind of harm posed, the possibility of which, made Defendants' activities abnormally dangerous.

42. Plaintiffs are entitled to a judgment finding Defendants liable for damages, including punitive damages, suffered as a result of Defendants' abnormally dangerous activities and

awarding Plaintiffs adequate compensation therefore in amounts determined by the trier

of fact.

## THIRD CAUSE OF ACTION
### Alabama Extended Manufacturer's Liability Doctrine

43. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and

further alleges as follows:

44. Defendant Cameron designed, manufactured and/or supplied the Deepwater Horizon

BOPs.

45. Defendant Cameron's BOPs failed to operate upon the explosion, which should have

prevented the oil spill.

46. Defendant Cameron's BOPs were defectively manufactured and/or designed because they

failed to operate as intended.

47. As a result of the BOPs product defect, oil was released from the Deepwater Horizon

mobile offshore drilling unit thereby causing injury to Plaintiffs and the proposed class.

48. Defendant Cameron's BOPs were in a defective condition and unreasonably dangerous to

Plaintiffs when the BOPs left Defendant Cameron's control.

49. At all times, Defendant Cameron's BOPs were used in the manner intended.

50. By reason of the foregoing, Plaintiffs have incurred damages in an amount to be

determined at trial.

51. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class Members demand judgment against Defendants, jointly and severally, as follows:

(a)     An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiffs as Class Representatives; and appointing undersigned counsel as counsel for the Class;

(b)     Economic and compensatory damages in amounts to be determined at trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which establishes one of this Court's bases of jurisdiction to hear this case;

(c)     Punitive damages;

(d)     Pre-judgment and post-judgment interest at the maximum rate allowable by law;

(e)     Attorney's fees and costs of litigation;

(f)     Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate; and

(g)     A trial by jury as to all Defendants.

**RESPECTFULLY SUBMITTED BY:**

THE COCHRAN FIRM

 /s/J. Farrest Taylor
J. Farrest Taylor (AL 5755-R54-J)
Keith Givens (AL 5897-S82-J)
Angela J. Mason (AL 8428-S80-A)
Joseph D. Lane (AL 9991-N75-J)
163 W. Main Street
Dothan, AL 36302
Telephone:  (334) 793-1555

Mary Ann Patti (FL Bar No. 037087)
2005 W. Garden Street
Pensacola, FL 32502
(850) 437-3700
(850) 437-3535 fax


BECNEL LAW FIRM LLC
 /s/Daniel E. Becnel Jr.
Daniel E. Becnel Jr. (T.A. LA Bar No.24567)
Matthew B. Moreland (LA Bar No. 24567)
Salvadore Christina, Jr. (LA Bar No. 27198)
Robert M. Becnel (LA Bar No. 14072)
P. O. Drawer H
Reserve, LA 70084
Telephone: (985) 536-1186
Fax: (985) 536-6445
E-mail: dbecnel@becnellaw.com
E-mail: mmoreland@becnellaw.com
E-mail: schristina@becnellaw.com

AND

Camilo K. Salas III (LA Bar No. 11657)
Salas & Co., L.C.
650 Poydras Street
Suite 1660
New Orleans, LA 70130
Telephone: (504) 799-3080
Fax: (504) 799-3085
E-Mail:  csalas@salaslaw.com

AND

James C. Klick (LA Bar No. 7451)
Russ Herman (LA Bar No. 6819)
Stephen J. Herman (LA. Bar No. 23129)
Herman Herman Katz & Cotlar LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax: (504) 569-6024
E-Mail: sherman@hhkc.com

-18-

AND

Richard J. Arsenault (LA Bar No. 2563)
NEBLETT, BEARD & ARSENAULT
Post Office Box 1190
2220 Bonaventure Court
Alexandria, LA  71309-1190
Telephone:  (318) 487-9874
Facsimile:  (318) 561-2591
rarsenault@nbalawfirm.com

AND

Levin, Papantonio, Thomas, Mitchell, Echsner,
Rafferty & Proctor, P.A.
Brian H. Barr (FL Bar No. 335924)
Amanda R. Slevinski (FL Bar No. 0027041)
Neil E. McWilliams, Jr. (FL Bar No. 0016174)
Benjamin W. Gordon, Jr.  (FL Bar No. 882836)
(AL Bar No.: ASB0677045B)
William F. Cash, III (FL Bar No. 68443 )
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone:  (850) 435-7074

AND

R. Edison Hill (WV Bar I.D.#1734)
Hill, Peterson, Carper, Bee
& Deitzer, Pllc
500 Tracy Way
Charleston, West Virginia 25311-1261
Telephone:  (304) 345-5667

AND

Robert F. Kennedy, Jr. (NY Bar No. 1999994)
Kevin J. Madonna (NY Bar No. 2981181)
Kennedy & Madonna, LLP
46 Dewitt Mills Rd.
Hurley, NY 12443
Telephone:  845-514-2912
Fax:  845-230-3111
E-Mail: kmadonna@kennedymadonna.com

-19-

AND

Jerrold S. Parker, Esq. (NY Bar No. 1894666)
Andres F. Alonso, Esq. (NY Bar No. 2679231)
Parker Waichman Alonso, LLP
6 Harbor Park Drive
Port Washington, NY 11050
Telephone: (516) 466-6500
Fax: (516) 466-6665

AND

Hugh P. Lambert, Esq. (LA Bar # 9938)
Linda J. Nelson, Esq. (LA Bar # 7933)
Lambert & Nelson, PLC
701 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-1750
Fax: (504) 529-2931

Attorneys for Plaintiffs